UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANNETTE L. BIEHL,                          Case No. 14-10293

            Plaintiff,                       John Corbett O'Meara
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge
            Defendant.
_____/

**REPORT AND RECOMMENDATION**
<u>**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 14)**</u>

**I.    PROCEDURAL HISTORY**

    **A.    Proceedings in this Court**

On January 22, 2014, plaintiff Jeannette L. Biehl filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge John Corbett O'Meara referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 14).  Plaintiff also filed a reply brief in support of her motion. (Dkt. 16).

**B.    Administrative Proceedings**

Plaintiff filed the instant claim for disability and disability insurance benefits (DIB) on April 20, 2011, alleging that she became disabled on October 18, 2010.  (Dkt. 10-5, Pg ID 251-57).  The claims were initially disapproved by the Commissioner on July 15, 2011.  (Dkt. 10-3, Pg ID 167).  Plaintiff requested a hearing and on October 2, 2012, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Kathleen Eiler, who considered the case de novo. (Dkt. 10-2, Pg ID 125-47).  In a decision dated October 23, 2012, the ALJ found that plaintiff was not disabled.  (Dkt. 10-2, Pg ID 106-20).  Plaintiff requested a review of this decision on November 30, 2012.  (Dkt. 10-2, Pg ID 103-05).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on December 20, 2013, denied plaintiff's request for review.  (Dkt. 10-2, Pg ID 33-37); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **GRANTED IN PART**, that the

Commissioner's motion for summary judgment be **DENIED IN PART**, that the

findings of the Commissioner be **REVERSED IN PART**, and that this matter be

remanded for further proceedings under sentence four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, born in 1963, was 47 years of age on the alleged disability onset

date and 48 years old on the date last insured, June 30, 2011.  (Dkt. 10-2, Pg ID

118).  Plaintiff had past relevant work experience as an adult foster care worker, a

nurse aide, and a custodian.  (Dkt. 10-2, Pg ID 118).  The ALJ applied the five-

step disability analysis to plaintiff's claim and found at step one that plaintiff had

not engaged in substantial gainful activity during the period from her alleged onset

date through her date last insured.  (Dkt. 10-2, Pg ID 111).  At step two, the ALJ

found that plaintiff's degenerative disc disease, status post Achilles tendon repair,

and obesity were "severe" within the meaning of the second sequential step, and

that plaintiff's depression was not severe, noting her depression caused no more

than mild limitations.  (Dkt. 10-2, Pg ID 111-13).  At step three, the ALJ found no

evidence that plaintiff's combination of impairments met or equaled one of the

listings in the regulations.  (Dkt. 10-2, Pg ID 113).

The ALJ determined that plaintiff has the following residual functional

capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR
> 404.1567(a).  However, the claimant required an option
> to alternate between sitting and standing at will so long
> as she was not off task for more than 10% of any
> workday.  Additionally, the claimant could never push,
> pull, twist, or pivot with her left lower extremity. The
> claimant could occasionally balance, stoop, and climb
> ramps and stairs, but she could never crouch, kneel,
> crawl, or climb ladders, ropes, or scaffolds.  The
> claimant must also have avoided concentrated exposure
> to vibrations and workplace hazards.

(Dkt. 10-2, Pg ID 113-18).  At step four, the ALJ found that plaintiff was unable to

perform her past relevant work, because the exertional demands of those positions

exceeded plaintiff's RFC.  (Dkt. 10-2, Pg ID 118).  At step five, the ALJ denied

plaintiff benefits because she could perform a significant number of jobs available

in the national economy, including charge account clerk, document preparer, and

order clerk.  (Dkt. 10-2, Pg ID 119-20).

**B.     Plaintiff's Claims of Error**

Plaintiff alleges three claims of error: (1) the ALJ's Step Three

determination is improper and not supported by substantial evidence; (2) the ALJ

violated the procedural aspect of the treating physician rule in evaluating the

medical source opinion of Dr. Lene Heinlen; and (3) the ALJ's RFC assessment is

not supported by her own findings and is unsupported by substantial evidence.

Plaintiff first contends that the ALJ's Step Three analysis and determination

that plaintiff's impairments do not meet or medically equal Listing 1.04(A) is not supported by substantial evidence because the ALJ fails to properly analyze or explain why plaintiff's impairments do not meet or medically equal Listing 1.04(A).  Plaintiff asserts that "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r Soc. Sec.,* 424 Fed. Appx. 411, 416 (6th Cir. 2011)).  In *Reynolds v. Commissioner of Social Security*, 424 Fed. Appx. 411 (6th Cir. 2011), the Sixth Circuit reversed the district court's affirmance of the ALJ's decision because the ALJ did not explain why the claimant did not meet or medically equal Listing 1.04, explaining that the ALJ "needed to actually evaluate the evidence, compare it to section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Reynolds*, 424 Fed. Appx. at 416.  In *Reynolds*, the ALJ's step three analysis indicated that "Claimant does not have an impairment or combination of impairments which, alone or in combination, meet sections 1.00 or 12.00 of the Listings." *Id.* at 415.

Plaintiff argues that the ALJ's Step Three determination here is similarly

bereft of an actual discussion beyond that of a simple regurgitation of the Listing language, and that the ALJ fails to specifically identify the reasons for determining that plaintiff fails to meet Listing 1.04(A).  (Tr. 81).  Plaintiff asserts that she has diagnoses of:  lumbar radiculitis with left lower extremity radiculopathy, discogenic low back pain, lumbar spondylosis, and lumbago.  (Tr. 369).  Treatment records from Dr. David A. Herz, dated July 12, 2011, document a diagnosis of chronic degenerative lumbar spine disease, with disc herniation at L5-S1 on the left.  (Tr. 463).  An MRI of plaintiff's lumbar spine, dated March 10, 2011 documents significant findings of: broad based posterior disc bulge, eccentric to the left at L5-S1, resulting in stenosis of the left lateral recess, compressing the traversing left S1 nerve root without central canal stenosis; small disc protrusions at L1-L2 and L2-L3; mild disc bulge at L3-L4; and mild degenerative facet changes within the mid and lower lumbar spine.  (Tr. 371). In addition, loss of disc height is also noted at L1-L2, L3-L4, and L5-S1.  (*Id.*)

Plaintiff continues that in addition, Dr. Bhimalli reviewed and summarized the significant findings of plaintiff's March 2011 lumbar spine MRI, and upon examination, plaintiff was observed with significant tenderness over the lower lumbar spine and mild tenderness over the left lumbar facet joint area.  (Tr. 369). Flexion and extension were also restricted and quadrant loading testing was positive on the left side.  (*Id.*)  Plaintiff further demonstrated decreased sensation

6

to touch on the left lateral aspect of the left leg, straight leg raise testing was positive bilaterally, and plaintiff was observed with a positive Patrick's test on the left side. (*Id.*) Plaintiff was also observed with an antalgic gait pattern, favoring her lower left limb. (Tr. 462). Dr. Herz indicated that he reviewed plaintiff's MRI results, and noted findings of: degenerative disc disease and facet joint disease from L1-L2 through L3-L4; early modic change at L3-L4 and loss of disc height; L5-S1 disc herniation with markedly reduced disc height; and moderately advanced modic change and facet joint disease. (Tr. 463). The doctor noted plaintiff has chronic lumbar degenerative lumbar spine disease, with disc herniation at L5-S1 on the left, and specifically indicated that plaintiff was "a surgical candidate." (*Id.*) Plaintiff was observed with a very limited range of motion and soft tissue tenderness in the lumbar paraspinous region. (Tr. 334-35). Furthermore, plaintiff continues, her treating physician, Dr. Heinlen, completed a September 1, 2011 Medical Source opinion opining that plaintiff cannot sustain a typical full-time 8-hour workday. (Tr. 519-22). Plaintiff related that the reason she is unable to work is due to problems with her back, and testified that she experiences constant pain in her lower back and down her left leg. (Tr. 98). She described her pain as an ache and sharp in nature, and explained that the pain travels down her left leg. (*Id.*) She stated that she could only stand for about 10 minutes at one time, sit for about 10 to 15 minutes at one time, walk about "a

block or so" at one time without stopping, and the heaviest amount of weight she

could lift and carry is 10 pounds. (Tr. 98, 100).

Plaintiff acknowledges that it is well settled that this court will not overturn

an ALJ's decision if the failure to articulate Step Three findings is harmless. *See*

*M.G. v. Comm'r of Soc. Sec.,* 861 F. Supp.2d 846, 859-60 (E.D. Mich. 2012).

Plaintiff contends, however, that remand is appropriate in cases, such as this,

where the district court's review of the ALJ's decision and the record evidence

leaves open the possibility that a Listing is met or equaled. *See Reynolds*, 424

Fed. Appx. at 416 ("in this case, correction of such an error is not merely a

formalistic matter of procedure, for it is possible that the evidence [the plaintiff]

put forth could meet this listing").  Plaintiff argues that, taking the entirety of the

evidence and facts together, along with the evidence and testimony outlined

above, it is unreasonable to conclude that the ALJ's articulation error was

harmless, since the evidence *could* reasonably meet or equal the relevant

Listing/Listings. Plaintiff continues that regardless of how the ALJ might

ultimately decide plaintiff's claims, this court cannot say that, if the ALJ had made

the required findings at Step Three, she necessarily would have found that plaintiff

did not meet or medically equal the relevant Listing.  Plaintiff contends, in

addition, that if the ALJ does find that the evidence establishes medical

equivalence, the plaintiff would be presumptively entitled to benefits.  *See*

8

*Christephore,* 2012 WL 2274328, at *6. Plaintiff thus argues that because this court cannot conclude that the ALJ's error is harmless, remand is appropriate. *See Reynolds,* 424 Fed. Appx. at 416.

　　As her second claim of error, plaintiff contends that the ALJ's determination to reject Dr. Heinlen's treating physician opinion is not supported by substantial evidence and that the ALJ failed to comply with the procedural aspect of the treating physician rule. According to plaintiff, the ALJ here summarizes Dr. Heinlen's RFC assessment in her decision and continued on to state that: "[t]he undersigned gives limited weight to Dr. Heinlen's opinion because it is without substantial support from the medical evidence and the record as a whole, including Dr. Heinlen's own treatment notes which show very few objective findings to support such significant limitations." (Tr. 85). Surely, plaintiff argues, such a vague and conclusory explanation cannot be said to be supported by substantial evidence or constitute the "good reasons" contemplated by SSR 96-2p. Plaintiff also takes exception to the ALJ's statement that Dr. Heinlen's treatment notes "show very few objective findings." *Id.* Plaintiff argues that Dr. Heinlen is plaintiff's primary care physician and has continuously overseen plaintiff's back pain complaints since her initial injury in March 2011, and that Dr. Heinlen was also the physician who ordered plaintiff to have an MRI. (Tr. 410). In addition, Dr. Heinlen was regularly updated on plaintiff's status from Dr. Herz (Tr. 459-64)

9

and Dr. Bhimalli (Tr. 368-70, 504-17), and Dr. Heinlen was distributed a copy of plaintiff's MRI.  (Tr. 372).  Plaintiff argues that the ALJ neglects to properly consider the extent that Dr. Heinlen was fully involved in longitudinal picture of plaintiff's care, and, as a result, the ALJ's decision to give "limited weight" is not supported by substantial evidence and made without giving "good reasons." Plaintiff contends therefore that remand is warranted for proper consideration of this evidence.

Plaintiff also asserts, as her third claim of error, that at Step Two of the sequential evaluation process, the ALJ determined that plaintiff had "mild" limitations in social functioning and concentration, persistence, and pace.  (Tr. 80). Plaintiff argues, however, that the ALJ fails to include in her RFC assessment any psychological limitations whatsoever.  (Tr. 81-82).  According to plaintiff, SSR 96-8p indicates that psychological limitations "must be expressed in terms of work-related functions."  *See* SSR 96-8p.  Moreover, the Ruling indicates that "[w]ork-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *See* SSR 96-8p.

According to plaintiff, the ALJ here determined that plaintiff has limitations

10

in social functioning and concentration, persistence, and pace.  (Tr. 80).  Plaintiff argues that by failing to identify how these psychological limitations are accounted for in her RFC assessment, the ALJ has committed error.  (Tr. 81-80). As a result, plaintiff continues, the ALJ's RFC assessment and responses to her hypothetical questions from the vocational expert are not supported by substantial evidence.  According to plaintiff, the Sixth Circuit has held that where the vocational expert testimony is used as substantial evidence to prove "the existence of a substantial number of jobs that plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects."  *Felisky v. Bowen*, 35 F.3d 1027, 1035-36 (6th Cir. 1994).  Failure to do so warrants a remand.  *Faucher v. Sec'y of Health &Human Servs.*, 17 F. 3d 171, 175 (6th Cir. 1994). Accordingly, plaintiff concludes, this case should be remanded for proper consideration of her psychological limitations.

### C.     The Commissioner's Motion for Summary Judgment

The Commissioner first argues that substantial evidence supports the ALJ's findings at Step Three of the sequential evaluation.  The Commissioner explains that at Step Three, the ALJ "must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."

*Reynolds*, 424 Fed. Appx. at 415. In *Reynolds*, the Sixth Circuit found that the ALJ erred because "[n]o analysis whatsoever was done as to whether Reynolds' physical impairments met or equaled a Listing under section 1.00, despite his introduction concluding that they did not." *Id.* The *Reynolds* Court further concluded "correction of such error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing." *Id.* Thus, the Court found, "the ALJ needed to actually evaluate the evidence, compare it to section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.*

The Commissioner states that Listing 1.04 is for "[d]isorders of the spine (e.g., herniated nucleous pulposus, spinal arachniditis, spinal stenosis osteoarthritis, degenerative disc  disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, at § 1.04. There are three alternative methods of meeting the listing, and plaintiff argues that she could meet the requirements outlined in Listing 1.04(A): "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associate muscle weakness) accompanied by

12

sensory or reflex loss and, if there is involvement of the lower back, positive

straight-leg raising test (sitting and supine)." *Id.* The Commissioner asserts that,

regarding motor loss, the Social Security Administration further provides:

"inability to walk on the heels or toes, to squat, or to arise from a squatting

position, when appropriate, may be considered evidence of significant motor loss."

20 C.F.R. Pt. 404, Subpt. P, App. 1, at § 1.00(E). The Commissioner argues that

contrary to plaintiff's allegations, the ALJ here did discuss whether or not

plaintiff's back impairment met the requirements of Listing 1.04(A), making the

following finding: "[t]hrough the date last insured, the claimant did not have an

impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1." (Tr. 81). The Commissioner contends that had the ALJ stopped her

analysis here, it would have been insufficient under *Reynolds*. The ALJ, however,

continued and explained why listing 1.04 was not met:

> The claimant's degenerative disc disease failed to meet
> the requirements for listing 1.04 (Disorders of the
> Spine), because the record, *consistent with the findings
> below*, did not demonstrate compromise of a nerve root
> or the spinal cord with (A) evidence of nerve root
> compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine,
> motor loss accompanied by sensory or reflex loss and
> positive straight-leg raising; (B) spinal arachnoiditis; or
> (C) lumbar spinal stenosis resulting in
> pseudoclaudication.

13

(Tr. 81, emphasis added).  The Commissioner asserts that the ALJ's analysis leaves no need for this Court to speculate as to her reasons for finding Listing 1.04(A) not met.  Thus, the ALJ's analysis is sufficient.

The Commissioner continues that, assuming *arguendo* that the ALJ's explanation is found to be insufficient, any error is harmless.  *In Reynolds*, the Sixth Circuit did not say that an ALJ's failure to articulate a Step Three finding might never be deemed harmless.  Where "concrete factual and medical evidence" is "apparent in the record" such that a court can discern how the ALJ "would have" reasoned, the outcome should be affirmed.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 656-57 (6th Cir. 2009).  The Commissioner recognizes that in performing this analysis, the Court must exercise caution. Indeed, the Court may not find a procedural error harmless merely because substantial evidence exists in the record that could uphold the ALJ's decision, and the Sixth Circuit has warned that it may be difficult or impossible to determine whether an error is harmless when the record contains "conflicting or inconclusive evidence" not resolved by the ALJ or "evidence favorable to the claimant that the ALJ simply failed to acknowledge or consider."  *Rabbers,* 582 F.3d at 657-58.  In such circumstances, the Court cannot speculate as to how the ALJ might have weighed such evidence.

According to the Commissioner, the ALJ recognized that plaintiff had evidence of nerve root compression in a March 10, 2011 lumbar MRI (Tr. 83,

14

371), which fulfills the first part of Listing 1.04(A).  However, the Commissioner

continues, this root compression must be "characterized by … motor loss," which

plaintiff's doctors never assessed or observed.  Indeed, as the ALJ highlights, in

July 2011 "Dr. Herz stressed that the claimant did not demonstrate motor or

sensory deficit."  (Tr. 83, 462).  As the ALJ further notes, on August 9, 2011, "Dr.

Herz observed that plaintiff continued to demonstrate a restricted range of motion

in her back.  However, he also noted that the claimant ambulated with a normal

gait and exhibited no low back tenderness, no muscle spasm, no deformity,

negative straight leg-raise testing, and no motor or sensory deficit."  (Tr. 83-84,

460).  The Commissioner asserts that, stated plainly, she cannot find evidence in

plaintiff's medical records of muscle weakness or atrophy; or any inability to walk

on heels or toes, squat, or rise from a squatting position—and plaintiff does not

identify any.  Plaintiff emphasizes evidence of positive straight-leg testing (before

she sought any treatment) and evidence of reduced range of motion, but, as this

Court made clear in *Brown v. Commissioner of Social Security*, 2013 WL 6537980

(E.D. Mich. Nov. 18, 2013), *adopted by* 2013 WL 6538136 (E.D. Mich. Dec. 13,

2013), Listing 1.04(A)'s requirements "are conjunctive; there must be evidence of

limited motion *and* motor loss *and* positive straight-leg raising tests.  Absent

evidence of motor loss, the evidence of limited motion and positive straight-leg

raising tests will not suffice."  *Id.* at \*11 (emphasis in original).  The

15

Commissioner asserts that plaintiff should take nothing from this argument.

The Commissioner argues that the fact that substantial evidence supports the ALJ's finding that plaintiff's back impairment does not meet Listing 1.04(A), however, does not complete the ALJ's step three analysis. Although plaintiff does not develop the argument, the Commissioner contends that when a claimant has a listed impairment but does not meet the criteria, an ALJ can find that the impairment is "medically equivalent" to the listing if the claimant has "other findings related to [the] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(a). The Social Security Administration requires that the "judgment of a physician designated by the Commissioner on the issue of equivalence on the evidence before the Administrative Law Judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180 at *3; *see also* 20 C.F.R. § 404.1526(c) ("We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner"); *Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medial equivalence is made"). SSA guidance provides that a "Disability Determination and Transmittal" form signed by a medical consultant can fulfill this requirement. *See* SSR 96-9p, 1996 WL 374180 at *3. The Commissioner

16

contends that the record here contains a signed "Disability Determination and Transmittal" form (Tr. 134) that refers to a July 14, 2011 physical RFC completed by Dr. Daniel Dolanski. (Tr. 129-31). The Commissioner contends that Dr. Dolanski considered Listing 1.04, but implicitly found that it was not met or equaled by moving forward and assessing plaintiff's RFC. (Tr. 128). Indeed, the Commissioner continues, no assessment of RFC would have been necessary if Dr. Dolanski had found that plaintiff's condition was equivalent to a listed impairment. *See*, *e.g.*, *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (assessment of RFC implies that no listing is met or equaled). The Commissioner argues therefore that equivalence is not an issue in this case.

The Commissioner further asserts that the ALJ assessed plaintiff with an RFC for a very limited range of sedentary work. (Tr. 81). The ALJ explained that in assessing this RFC he afforded significant weight to the medical opinion of Dr. Dolanski. (Tr. 84-85, 129-31). He further explained that this RFC was consistent with Dr. Allard's statement that plaintiff could "certainly" return to work "with no restrictions" and plaintiff's statement that she felt "ready to return." (Tr. 85, 283). The ALJ explained that she gave Dr. Allard's opinion great weight because it was:

> [c]onsistent with the medical evidence and the record as
> a whole, including Dr. Allard's own notes, which
> indicate consistent improvement in the claimant's
> condition following her surgery. Moreover, Dr. Allard
> was the claimant's treating surgeon and had acquired an

17

in-depth knowledge about the effect the claimant's
impairments had on her daily lifestyle.

(Tr. 85).  The Commissioner argues that plaintiff fails to address the ALJ's proper

reliance on this evidence, or explain any error in her rationale.  Instead, plaintiff

argues that the ALJ erred by failing to provide good reasons for the limited weight

she afforded to an opinion from Dr. Lene Heinlen.  (Tr. 519-22).  Plaintiff also

argues that the ALJ's RFC finding fails to account for her mild limitations in

social functioning, concentration, persistence, and pace.  (Tr. 80).  The

Commissioner contends that plaintiff's arguments are not persuasive.

The Commissioner notes that plaintiff argues that the ALJ violated the

treating source rule by failing to accord controlling weight to the opinion of Dr.

Heinlen.  The Commissioner counters that the ALJ considered Dr. Heinlen's

September 2011 opinion and accurately accorded this opinion "limited weight"

because "it is without substantial support from the medical evidence and the

record as a whole, including Dr. Heinlen's own treatment notes which show very

few objective findings to support such significant limitations."  (Tr. 85).  The

Commissioner contends that the ALJ's reasons for the weight given to Dr.

Heinlen's opinion are sufficiently specific to permit this Court's review.

According to the Commissioner, this is not a case in which the ALJ failed to set

forth "good reasons" for the weight assigned to a treating-source opinion.  *See*

18

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Rather, throughout her decision, the ALJ provided analysis of Dr. Heinlen's opinion and treatment record that touched on several of the factors identified in 20 C.F.R. § 404.1527(c), including the nature of the treating relationship, the supportability of the opinion, and its consistency with the record as a whole. The Commissioner argues that the treating source rule does not require "an exhaustive factor-by-factor analysis;" it is enough that the ALJ's decision permits "a clear understanding of the reasons for the weight given." *Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).

The Commissioner continues that, more importantly, substantial evidence supports the reasons the ALJ provided, and plaintiff fails to provide any persuasive argument to the contrary. For example, as the ALJ notes, in April 2011, Dr. Heinlen referred plaintiff to a pain clinic and for physical therapy after a lumbar MRI documented evidence of degenerative disc disease. (Tr. 83, 408). And, as the ALJ correctly notes, Dr. Heinlen's subsequent notes do not denote any finding to support the levels of limitation she assessed. (Tr. 85, 470-95). In fact, as the ALJ explains, "in June 2012, Dr. Heinlen noted that the claimant's 'symptoms are relieved by medication.'" (Tr. 84, 472). Although plaintiff counters that Dr. Heinlen nevertheless ordered and reviewed plaintiff's lumbar MRI, the Commissioner asserts that this is not compelling. The MRI merely

19

established that plaintiff had a broad based disc bulge resulting in stenosis and compression of the traversing left S1 nerve root, small disc protrusions at L1/L2 and L3/L4, and a mild disc bulge at L3/L4. (Tr. 368-69). The Commissioner contends that the MRI provided no information about the functional effects of that impairment, and plaintiff's heavy emphasis on the MRI is misplaced.

The Commissioner notes that plaintiff also comments that "Dr. Heinlen was regularly updated on Plaintiff's status from Dr. Herz and Dr. Bhimalli." The Commissioner accedes that although this is true, it lends little to plaintiff's argument as she fails to identify anything in the records from Dr. Herz or Dr. Bhimalli that support the severe limitations Dr. Heinlen assessed. The Commissioner argues that the ALJ correctly notes that Dr. Heinlen's opinion is not supported by the record as a whole. (Tr. 85). Indeed, Dr. Bhimalli administered epidural steroid injections but did not comment on plaintiff's limitations (Tr. 369), and Dr. Herz noted that plaintiff's pain had stabilized to a tolerable level, and plaintiff was not interested in another MRI or surgery. (Tr. 460). Further, on exam, plaintiff had a normal gait; no low back tenderness, muscle spasm or deformity; a negative straight leg raise test; and no motor or sensory deficit. (Tr. 460). The Commissioner contends that these findings equally do not support Dr. Heinlen's opinion.

According to the Commissioner, plaintiff seems to take issue with the fact

that the ALJ did not defer to an opinion from a source that regularly treated her. The Commissioner argues that while another ALJ might have chosen to overlook the lack of support and trust Dr. Heinlen's judgment solely based on her long-term treatment relationship, the ALJ's treatment of the doctor's opinion here is not unreasonable. Thus, the Commissioner concludes, plaintiff should take nothing from this challenge.

The Commissioner also notes that plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because it does not account for her mild limitations in social functioning, concentration, persistence, and pace. According to the Commissioner, however, this Court has explained that "[m]ild limitations do not require incorporation into an RFC assessment." *Boley v. Astrue,* 2012 WL 680393, at *12 (E.D. Mich. Feb. 10, 2012), *adopted by* 2012 WL 680392 (E.D. Mich. Mar. 1, 2012); *see also Suttles v. Colvin*, 543 Fed. Appx. 824, 826 (10th Cir. 2013) (finding no error in an ALJ not including in the RFC an assessed mild limitation in concentration). Thus, the Commissioner concludes that plaintiff should take nothing from this argument.

### D.   Plaintiff's Reply Brief

Plaintiff re-argues that the ALJ's Step Three determination that plaintiff does not meet or medically equal the requirements of Listing 1.04(A) for spinal disorders is not supported by substantial evidence. Plaintiff contends that

21

*Reynolds, supra*, indicates that the ALJ needs to not only identify the proper

Listing, but also evaluate the relevant evidence and give an explained conclusion

in order to allow for proper judicial review. *Reynolds*, 424 Fed. Appx. 411.

According to plaintiff, the ALJ's analysis is nothing more than a simple

regurgitation of the Listing language, without any comparison or weighing of the

relevant evidence against the Listing. Plaintiff asserts that a proper review of the

evidence reveals that she has satisfied many of the Listing requirements. Namely,

a lumbar spine MRI documents significant findings of: broad based posterior disc

bulge, eccentric to the left at L5-S1, resulting in *stenosis* of the left lateral recess,

*compressing the traversing left S1 nerve root* without central canal stenosis; small

disc protrusions at L1-L2 and L2-L3; mild disc bulge at L3-L4; and mild

degenerative facet changes within the mid and lower lumbar spine. (Tr. 371).

Plaintiff was observed with significant tenderness over the lower lumbar spine and

mild tenderness over the left lumbar facet joint area, along with restricted flexion

and extension. (Tr. 369). In addition, plaintiff also demonstrated decreased

sensation to touch on the left lateral aspect of the left leg, positive straight-leg

raise testing bilaterally, and a positive Patrick's test on the left side, (*Id.*), and was

also observed with an antalgic gait pattern, favoring her lower left limb. (Tr. 462).

Dr. Herz indicated that he reviewed plaintiff's MRI results, and noted findings of:

degenerative disc disease and facet joint disease from L1-L2 through L3-L4; early

modic change at L3-L4 and loss of disc height; L5-S1 disc herniation with *markedly* reduced disc height; and moderately advanced modic change and facet joint disease.  (Tr. 463).  Plaintiff asserts that to summarily conclude that she has not demonstrated compromise of a nerve root or spinal cord, sensory loss, positive straight leg raising, and a limitations of  range of motion is grossly inconsistent with the record.

Moreover, plaintiff continues, the other problem with this argument is that the ALJ is offering her vague and summary conclusion as support to why she determined that plaintiff "failed to *meet* the requirements for Listing 1.04." (Tr. 81, *emphasis added*).  Plaintiff asserts that this certainly does not provide an explained conclusion regarding *medical equivalency*.  However, remand is appropriate in cases, such as this, where the district court's review of the ALJ's decision and the record evidence leaves open the possibility that a Listing is met or equaled.  *See Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing"). Plaintiff argues that the Commissioner's reliance upon the fact that a State Agency physician, Dr. Dolanski, formulated an RFC assessment at the initial determination stage to support the ALJ's lack of an explained equivalency finding is made without merit. In fact, plaintiff continues, the ALJ never indicates that she relied upon Dr.

Dolanski's opinion regarding medical equivalency. Moreover, Dr. Dolanski also fails to provide an explained conclusion concerning equivalency. (Tr. 128). Plaintiff concludes that, taking all of the facts and evidence together, this Court cannot reasonably conclude that the ALJ's error of failing to properly consider plaintiff's impairments in light of Listing 1.04(A) was harmless, and remand therefore is appropriate for proper consideration of the issues.

Plaintiff also takes issue with the Commissioner's statement and argues that "the reasons for the weight given to Dr. Heinlen's opinion are sufficiently specific to permit this Court's review." Plaintiff contends that this argument fails because the only reason the ALJ indicated for assigning "limited weight" to Dr. Heinlen's opinion is because it is "without substantial support from the medical evidence and the record as a whole." (Tr. 85). Plaintiff argues that this unexplained conclusion certainly cannot constitute the "good reasons" required by SSR 96-2p. Plaintiff further notes that the Commissioner argues that plaintiff's reliance upon Dr. Heinlen's review of plaintiff's MRI evidence "is misplaced," and that it is immaterial that Dr. Heinlen was regularly informed of plaintiff's status from Drs. Herz and Bhimalli. Plaintiff contends that these arguments are without merit, and in fact, they speak directly towards the principles of the treating physician rule. A treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the record, and even if it is not given

24

controlling weight, it is subject to a rebuttable presumption of deference.  *See* 20 C.F.R. § 404.1527(c).  Plaintiff argues that here, Dr. Heinlen's opinion should have been given controlling weight since Dr. Heinlen: is plaintiff's primary care physician and has continuously overseen plaintiff's back pain complaints since her initial injury in March 2011; was also the physician that ordered plaintiff to have an MRI; and was regularly updated and informed on plaintiff's status and treatment from Dr. Herz and Dr. Bhimalli.  In addition, plaintiff contends that Dr. Heinlen's opinion is supported by objective and clinical findings, uncontradicted, and consistent with the substantial evidence contained in the case record.  Plaintiff concludes therefore that Dr. Heinlen's opinion should have been given controlling weight.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with

26

observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

27

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc.*

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

29

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

30

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

**C.   Analysis and Conclusions**

**1.   The ALJ's Step Three Determination is Supported by Substantial Evidence**

The ALJ here found, at Step Three of the sequential analysis, that:

> The claimant's degenerative disc disease failed to meet the requirements for listing 1.04 (Disorders of the Spine), because the record, *consistent with the findings below*, did not demonstrate compromise of a nerve root (including the cauda equine) or the spinal cord with (A) evidence of nerve root compression characterized by neruo-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflect loss and positive straight-leg raising; (B) spinal arachnoiditis; or (C) lumbar spinal stenosis resulting in pseudoclaudication.

(Tr. 81, emphasis added). Plaintiff argues that the ALJ's Step Three analysis is

flawed because the ALJ failed to properly evaluate whether plaintiff's

degenerative disc disease met or medically equaled Listing 1.04(A).  The

Commissioner responds that the ALJ's Step Three analysis is sufficient.

Under the theory of presumptive disability, a claimant is eligible for benefits

if he has an impairment that meets or medically equals a Listed Impairment.  *See*

*Christephore*, 2012 WL 2274328, at *6.  The claimant bears the burden of

establishing that his or her impairments match a Listing or are equal in severity to

a Listing.  *See Harvey v. Comm'r of Soc. Sec.*, 2014 WL 5465531, at *4 (E.D.

Mich. Oct. 28, 2014).  To show that an impairment matches a Listing, the claimant

must show that his or her impairments meet all of the specified criteria.  *Sullivan v.*

*Zebley*, 493 U.S. 521, 530 (1990).  If a claimant's impairment "manifests only

some of those criteria, no matter how severely," the impairment does not qualify.

*Id.*  To satisfy this burden the claimant must offer medical findings equal to the

severity of the requirements, and the findings must be supported by medically

acceptable clinical and laboratory techniques.  20 C.F.R. § 404.1526(b).

When considering presumptive disability at Step Three, "an ALJ must

analyze the claimant's impairments in relation to the Listed Impairments and must

give a reasoned explanation of his findings and conclusions in order to facilitate

meaningful review."  *Christephore*, 2012 WL 2274328, at *6  (citing *Reynolds*,

424 Fed. Appx. at 416).  An ALJ's failure to sufficiently articulate his Step Three

findings is error.  *See M.G.*, 861 F. Supp.2d at 858-59; *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2012) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section").  For example, in *Andrews v. Commissioner of Social Security*, 2013 WL 2200393 (E.D. Mich. May 20, 2013), plaintiff argued that the ALJ erred in failing to consider whether her cervical and lumbar spine impairments meet or medically equal Listing 1.04A for "disorders of the spine." *Id.* at *11.  The ALJ there simply stated: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments[.]" *Id.*  The court noted that the ALJ explicitly found that plaintiff suffers from degenerative disc disease and cervical spondylosis, and thus "should have considered and discussed [plaintiff's] impairment(s) relative to Listing 1.04A," and "[h]er failure to do so constitutes legal error." *Id.* at *12.

Here, the ALJ expressly considered whether plaintiff's impairments met Listing 1.04, and determined that they did not.  Plaintiff contends that the ALJ's explanation is inadequate.  The undersigned concedes that, standing alone, it may be questionable as to whether the ALJ's analysis as stated at Step Three of her decision suffices to support a finding that plaintiff's impairments did not meet Listing 1.04(A).  However, it is well-settled that the Court may look at the rest of

the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three determination. *See Vance v. Colvin*, 2014 WL 4925069, at *13 (N.D. Ohio Sept. 30, 2014) (citing *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006)).  Indeed, the ALJ here specifically notes that her finding is based on the "record, *consistent with the findings below*" (Tr. 81, emphasis added), and a review of the ALJ's decision reveals that the ALJ did discuss all of the medical evidence upon which plaintiff relies.  Further, the court will not overturn an ALJ's decision if the failure to articulate Step Three findings was harmless. *See M.G.*, 861 F. Supp.2d at 859.  Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled...." *Id..* at 861 (citation omitted, emphasis in original).  This is because the Sixth Circuit "has consistently rejected a heightened articulation standard, noting . . . that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Andrews*, 2013 WL 2200393, at *12 (citing *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citation omitted)).  As the *Staggs* court further stated, "[n]or is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three;

34

the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire

decision for statements supporting his step three analysis." *Staggs*, 2011 WL

3444014, at *3 (citing *Bledsoe*, 165 Fed. Appx. at 411).  Thus, remand is not

required where the evidence makes clear that even if the ALJ "had made the

required findings, [she] *would have* found the claimant not disabled." *M.G.*, 861

F. Supp.2d at 861.  Conversely, remand is appropriate in cases where the court's

review of the ALJ's decision and the record evidence leaves open the possibility

that a listing is met.  *See Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction

of such an error is not merely a formalistic matter of procedure, for it is possible

that the evidence [the plaintiff] put forth could meet this listing").

Here, in order for plaintiff to meet the criteria of Listing 1.04A, she must

show that she has a disorder of the spine with:

> Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion
> of the spine (atrophy with associated muscle weakness or
> muscle weakness) accompanied by sensory or reflex loss
> and, if there is involvement of the lower back, positive
> straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.  It is well-settled that to "meet"

a listing, a claimant's impairments must satisfy each and every element of the

listing.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Blanton v. Soc. Sec.*

*Admin.*, 118 Fed. Appx. 3, 6 (6th Cir. 2004).  Even if plaintiff cannot demonstrate

that she meets the criteria of Listing 1.04A, however, she can still satisfy her burden at Step Three by proving that she has an impairment (or combination of impairments) that medically equals this Listing. To do so, she must "present medical evidence that describes how h[er] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004). This means that plaintiff must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 Fed. Appx. 868, 874 (6th Cir. 2003).

In this case, the ALJ concluded that plaintiff has degenerative disc disease, and recognized that plaintiff had evidence of nerve root compression in a March 2011 lumbar MRI. (Tr. 83, 371). However, the ALJ found that plaintiff's degenerative disc disease failed to meet the remaining requirements for Listing 1.04(A), and plaintiff has not offered any evidence that she satisfies the remaining criteria of Listing 1.04A for muscle weakness and/or motor and sensory deficits and reflex abnormalities. The ALJ noted that on examination in July 2011, plaintiff "did not demonstrate motor or sensory deficit." (Tr. 83, citing Tr. 462). And, in August 2011, that same doctor, a neurologist, noted that plaintiff had a normal gait, with no low back tenderness, muscle spasm or deformity, and straight leg raising was negative, with no motor or sensory deficit present. (Tr. 83-84,

36

citing Tr. 460).  As the Commissioner points out, plaintiff has not pointed to any medical evidence in the record of muscle weakness or atrophy, or inability to walk on heels or toes, squat, or rise from a squatting position.  *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) ("The claimant has the burden at the third step of the sequential evaluation to establish that he meets or equals a listed impairment.") (internal citations omitted).  And, although plaintiff does emphasize evidence of positive straight leg testing at one time, and evidence of reduced range of motion, such is not sufficient to meet the Listing, as the requirements "are conjunctive; there must be evidence of limited motion *and* motor loss *and* positive straight-leg raising tests."  *See Brown*, 2013 WL 6537980, at *11.  "Absent evidence of motor loss, the evidence of limited motion and positive straight-leg raising tests will not suffice."  *Id.*

Additionally, as the Commissioner properly points out, substantial evidence supports the ALJ's determination that the plaintiff's back impairment does not equal a listing.  The Disability Determination Service's State agency medical consultant, Dr. Dolanski, whose opinion the ALJ gave significant weight, reviewed plaintiff's medical records and concluded that plaintiff did not meet or equal any listing when he signed off on the "Disability Determination and Transmittal" form, indicating that plaintiff is not disabled.  (Tr. 129-31, 134).  The doctor's signature on this form signaled that he had considered the question of

37

whether plaintiff met or equaled a listing. *See* SSR 96-6p, 1996 WL 374180, at *3 ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."); *Curry v. Sec'y of Health & Human Servs.*, 1988 WL 89340, at *5 (6th Cir. Aug. 29, 1988) ("[T]he physician's signatures on the SSA-831-U5 forms are proof that a physician designated by the Secretary has considered whether the claimant's impairments are medically equivalent to an impairment described in the Listings.") (citation omitted). The ALJ expressly relied on the opinion of Dr. Dolinski in reaching her decision, and thus properly considered the issue of equivalence. Plaintiff's first claim of error should be denied.

### 2.   Treating Physician Opinion

Plaintiff complains that the ALJ violated the treating physician rule in evaluating the medical source opinion of her treating physician, Dr. Lene Heinlen. The ALJ here stated:

> In September 2011, Dr. Heinlen completed a medical source statement form indicating that the claimant could only lift and carry less than ten pounds frequently, ten pounds occasionally, and up to twenty pounds rarely. Dr. Heinlen also noted that the claimant could only stand

38

> and walk for up to two hours, and sit for up to two hours in an eight-hour workday.  Furthermore, Dr. Heinlen stated that the claimant could not perform repetitive reaching, handling, fingering, lifting, pushing, pulling, bending, stooping, or kneeling.  Despite these limitations, Dr. Heinlen opined that the claimant was capable of "moderate work stress."  However, Dr. Heinlen also stressed that the claimant would likely miss work more than three times per month as a result of her impairments or treatment (Ex. 7B/3-6; see also Ex. 5F/5). The undersigned gives limited weight to Dr. Heinlen's opinion because it is without substantial support from the medical evidence and the record as a whole, including Dr. Heinlen's own treatment notes which show very few objective findings to support such significant limitations.

(Tr. 85).  As for the other opinion evidence in the record, the ALJ gave significant weight to the opinion of the State agency medical consultant, Dr. Dolinski, and great weight to the March 2, 2011 opinion of Dr. Allard, the orthopedic surgeon who operated on plaintiff's Achilles tendon.  (Tr. 84-85).  The undersigned notes, however, the Dr. Allard's opinion pre-dates plaintiff's back injury.  The ALJ also gave little weight to the January and March 2011 opinions of the physical therapists who treated plaintiff.  (Tr. 85).

As both parties acknowledge, and as the Sixth Circuit recently re-emphasized, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources.  *See Gayheart*, 710 F.3d at 375; *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007).  The opinion of a treating physician is the subject of a special

rule: such an opinion must be given controlling weight if it is well-supported and not inconsistent with the record, and even if it is not given controlling weight, it is subject to a rebuttable presumption of deference.  20 C.F.R. §§ 404.1527(c), 4.927(c); *see also Massey v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 917, 921 (6th Cir. 2011) ("[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'").  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  However, an opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight.  *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis*, 414 Fed. Appx. at 804 (a physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Rogers*, 486 F.3d at 406 (citing § 404.1527(d)(2)).  Indeed, SSR 82-62 requires that "[t]he

explanation of the decision must describe the weight attributed the pertinent

medical and non-medical factors in the case and reconcile any significant

inconsistencies.  Reasonable inferences may be drawn, but presumptions,

speculations and suppositions must not be used."  As a rule, the ALJ must build an

accurate and logical bridge between the evidence and his conclusion.  *See Wilson

v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-56 (6th Cir. 2004) (finding the ALJ's

failure to make sufficiently clear why he rejected the treating physician's opinion

was not harmless error, even if substantial evidence not mentioned by the ALJ

may have existed to support the ultimate decision to reject the treating physician's

opinion).  Thus, "an ALJ's decision must articulate with specificity reasons for the

findings and conclusions he makes."  *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428,

1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

Even when a treating source's medical opinion is not given controlling

weight because it is not well-supported by medically acceptable clinical and

diagnostic techniques or is inconsistent with other substantial evidence in the

record, the opinion should not necessarily be completely rejected; the weight to be

given to the medical opinion is determined by a set of factors that guides the

weight given to the medical opinion, including the treatment relationship,

supportability, consistency, specialization, and other factors. *See* SSR 96-2p, 1996

WL 374188 (July 2, 1996); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369,

372 (6th Cir. 2006).

The ALJ here simply stated that she discounted Dr. Heinlen's opinion
"because it is without substantial support from the medical evidence and the
record as a whole, including Dr. Heinlen's own treatment notes which show very
few objective findings to support such significant limitations." (Tr. 85). The ALJ
failed to further elaborate or identify any medical evidence supporting such a
finding and thus she failed to "articulate with specificity reasons for the findings
and conclusions [s]he makes" *Bailey*, 1999 WL 96920, at *4, and failed to build
an accurate and logical bridge between the evidence and her conclusion. *See*
*Wilson*, 378 F.3d at 544-56. Dr. Heinlen consistently notes plaintiff's complaints
of acute back pain that is increasing in intensity, observed that plaintiff was in
moderate distress, and an MRI revealed (1) broad based posterior disc bulge,
eccentric to the left at L5-S1, resulting in stenosis on the left lateral recess,
compressing the traversing left S1 nerve root without central canal stenosis; (2)
small disc protrusions at L1-L2 and L2-L3 without mass effect; (3) mild disc bulge
at L3-L4 without mass effect; and (4) mild degenerative facet changes within the
mid and lower lumbar spine. (Tr. 404-10, 431-32, 448-49, 487-91). Further, even
though plaintiff has not had surgery on her back, neurosurgeon Dr. Herz did state
that plaintiff is a surgical candidate, but that she would like to avoid surgery if
possible, pain specialist Dr. Bhimalli, administers lumbar epidural injections to

42

plaintiff in an attempt to control her back pain, and plaintiff attended physical

therapy for her severe back impairments.  (Tr. 368-76, 390-96, 463).  The ALJ

does not specifically address how this objective testing and record evidence is

inconsistent with Dr. Heinlen's opinion, and her summary dismissal of Dr.

Heinlen's opinion fails to meet the requirements that the ALJ "give good reasons"

for not giving weight to a treating physician's opinion.  It is uncontested that Dr.

Heinlen was plaintiff's treating physician, and the record appears to make clear

that Dr. Heinlen treated plaintiff during the period she alleged she was disabled.

And, it is true that in describing some of the medical record evidence the ALJ

mentioned certain non-disabling evidence, such as that Dr. Heinlen noted that

plaintiff's "symptoms are relieved by medication" and that the lumbar epidural

injections provide plaintiff with some relief for about two weeks.  (Tr. 83-84).

However, the ALJ never specified whether she *relied* on these facts in assigning

little weight to Dr. Heinlen's opinion.  The ALJ was required to give "specific

reasons for the weight given to the treating source's medical opinion, supported by

evidence in the case record," and those reasons "must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight."  SSR 96-2p,

1996 WL 374188, at *5 (1996).

       Further, even if Dr. Heinlen's opinion was not entitled to controlling

weight, it was still entitled to deference.  20 C.F.R. § 404.1527(d)(2)(I).  As

explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion
> is not entitled to "controlling weight," not that the
> opinion should be rejected. Treating source medical
> opinions are still entitled to deference and must be
> weighed using all of the factors provided in 20 CFR
> 404.1527 and 416.927. In many cases, a treating source's
> medical opinion will be entitled to the greatest weight
> and should be adopted, even if it does not meet the test
> for controlling weight.

The ALJ failed to adequately address why Dr. Heinlen's opinion should not be

given controlling weight or even deference, as required by the regulations.  20

C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 546.  Further, the

undersigned cannot excuse the ALJ's failure to sufficiently articulate good reasons

simply because, as the Commissioner urges, there is sufficient evidence in the

record for the ALJ to discount the treating source's opinion.  *See Wilson*, 378 F.3d

at 546 (making it clear that an ALJ's noncompliance with the rule is not excused

simply because his decision is otherwise supported by substantial evidence on the

record).  The court presently is left without any understanding from the ALJ as to

why Dr. Heinlen's opinion is unsupported.  Thus, the undersigned concludes that

remand is necessary so the ALJ may re-evaluate the treating physician opinion and

all supporting treatment evidence.

### 3.    Plaintiff's RFC Assessment

Plaintiff next argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to include any psychological limitations whatsoever. Plaintiff notes that the ALJ determined that plaintiff has mild limitations in social functioning, concentration, persistence and pace, but failed to identify how those psychological limitations are accounted for in her RFC assessment. The Commissioner responds that the ALJ was not required to incorporate mild limitations into an RFC assessment.

As the Sixth Circuit has recognized, in determining an individual's RFC, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe." *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 787 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity). Moreover, SSR 96-8p provides that:

> In assessing RFC, the adjudicator must consider
> limitations and restrictions imposed by all of an
> individual's impairments, even those that are not
> "severe."  While a "not severe" impairment(s) standing
> alone may not significantly limit an individual's ability

> to do basic work activities, it may–when considered with
> limitations or restrictions due to other impairments–be
> critical to the outcome of a claim.

SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  Thus, once the ALJ here

determined that plaintiff suffers from severe physical impairments–degenerative

disc disease, status post Achilles tendon repair, and obesity–she was required to

consider these impairments in combination with all non-severe impairments,

including plaintiff's depression, in assessing her RFC.  *See Simpson v. Comm'r of*

*Soc. Sec.*, 344 Fed. Appx. 181, 190-91 (6th Cir. 2009).

In this case, it is, at best, unclear whether the ALJ considered the effect of

plaintiff's depression when formulating her RFC.  Indeed, a fair readings of the

ALJ's decision suggests that she did not.  After discussing plaintiff's mental

impairment, and finding it to mildly limit her activities of daily living, social

functioning, and concentration, persistence or pace (Tr. 79-80), the ALJ made no

mention whatsoever of any limitations resulting from plaintiff's mental

impairment.  In fact, the ALJ's four and a half page RFC analysis does not so

much as mention plaintiff's mental impairment, and instead addresses only her

medically determinable physical impairments.  (Tr. 82-86).  For these reasons, the

ALJ's written decision leaves the reader with the impression that she failed to

consider plaintiff's nonsevere mental impairment in formulating her RFC.

The Commissioner argues in response that "[m]ild limiations do not require

46

incorporation into an RFC assessment," citing *Boley v. Astrue*, 2012 WL 680393, at *12 (E.D. Mich. Feb. 10, 2012), *adopted by* 2012 WL 680392 (E.D. Mich. Mar. 1, 2012). However, although the ALJ was arguably not required to *incorporate* mild limitations into plaintiff's RFC, she was required to *consider* those limitations in formulating plaintiff's RFC, and it is not evident from the ALJ's opinion that she did so. Indeed, the ALJ's RFC assessment is silent as to plaintiff's mental limitations. Accordingly, because it is at best unclear whether the ALJ considered plaintiff's mental impairment in determining her RFC, the court cannot conclude that the ALJ's finding is supported by substantial evidence. On remand, the ALJ should explicitly discuss plaintiff's mild limitations with respect to her activities of daily living, social functioning, and concentration, persistence, or pace in her RFC assessment.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART**, that the Commissioner's motion for summary judgment be **DENIED IN PART**, that the findings of the Commissioner be **REVERSED IN PART**, and that this matter be remanded for further proceedings under sentence four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 28, 2015                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

48

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on January 28, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov